IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NADEZDA LAKAEVA, | ) CIVIL NO. 22-00424 JMS-WRP |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION TO GRANT |
| vs. | ) IN PART AND DENY IN PART |
| | ) PLAINTIFF'S MOTION FOR |
| MOCKINGBIRD TINY HOMES | ) DEFAULT JUDGMENT |
| LLC, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff Nadezda Lakaeva's Motion for Default

Judgment Against Mockingbird Tiny Homes LLC and Chad Unrein as to All

Counts of the Complaint (Motion).  See Plf's Mot., ECF No. 41.  Defendants

Mockingbird Tiny Homes LLC (Mockingbird) and Chad Unrein (collectively,

"Defendants") did not respond to the Motion.  Plaintiff Nadezda Lakaeva

(Plaintiff) filed a reply memorandum, Plf's Reply, ECF No. 44, and a supplemental

memorandum regarding jurisdiction, Plf's Supp. Memo., ECF No. 46.  The Court

finds this Motion suitable for disposition without a hearing pursuant to Rule 7.1(c)

of the Local Rules of Practice of the United States District Court for the District of

Hawai'i.  After careful consideration of the record in this action and the relevant

legal authority, the Court FINDS AND RECOMMENDS that Plaintiff's Motion be GRANTED IN PART AND DENIED IN PART.[1]

<u>FACTUAL BACKGROUND</u>

On or about September 12, 2021, Plaintiff contacted Mockingbird to inquire about building two, tiny homes in Hawaii.  <u>See</u> Complaint, ECF No. 1 ¶ 13. Mockingbird informed Plaintiff that the process would include Plaintiff making a down payment equal to 50% of the total estimate and thereafter paying the remaining 50% upon delivery of the tiny homes.  <u>See</u> <u>id.</u> ¶ 14.

Plaintiff thereafter met with Mockingbird's manager, Defendant Chad Unrein (Unrein), and its agent, Roxy O'Neal (O'Neal), over the phone.  <u>See</u> <u>id.</u> ¶ 16.  Plaintiff explained to them that she wanted two tiny homes—one standard 30-foot home and a 37-foot, "gooseneck" home—both with custom high-end finishes.  <u>See</u> <u>id.</u> ¶ 17.  Based on Plaintiff's description, Unrein represented to Plaintiff that the cost to build each tiny home would be around $100,000 before tax, not to exceed $120,000 each.  <u>See</u> <u>id.</u>  Unrein also asked Plaintiff to pay a 50% deposit of the cost of the tiny homes.  <u>See</u> <u>id.</u> ¶ 19.

On October 1, 2021, Mockingbird emailed Plaintiff two invoices (the

---

[1] Within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court.  A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

"Invoices"), each requesting a deposit in the amounts of (1) $52,416.21 for the standard, tiny home and (2) $52,376.94 for the gooseneck home.  See id. ¶ 20. These Invoices were itemized estimates for "all materials, labor, and equipment to be provided by Mockingbird in the construction of both Tiny Homes, including, but not limited to, the trailer, lumber, custom appliances, air conditioning, water heater, custom cabinets, vanities, stone countertops, custom tile shower, doors, trim, custom fixtures, hardware, trim, roof, electrical supplies, paint and labor."  Id. ¶ 21.

On October 2, 2021, Plaintiff paid to Mockingbird a total deposit amount of $104,793.15 (the "Deposit") as requested in the Invoices.  See id. ¶ 23. As of that date, Plaintiff had not signed a contract and had not been told that the Deposit would be non-refundable.  See id. ¶ 24.  In making the Deposit, Plaintiff relied on Unrein's representations that $104,793.15 was approximately fifty percent of the anticipated total cost of constructing the two, tiny homes with high-end finishes and that the cost of each tiny home with additional upgrades would not exceed $120,000.  See id. ¶ 25.

After the Deposit was made, Mockingbird emailed Plaintiff a construction contract (the "Contract") for Plaintiff to sign.  See id. ¶ 28.  Consistent with Unrein's prior representations, the Contract provided that the total contract amount was $200,155.00 plus tax and that Plaintiff would pay the $104,793.15

3

Deposit.  See id. ¶¶ 29-31.  However, contrary to Unrein's prior statements and for the first time, the Contract stated that this Deposit was non-refundable.  See id. ¶ 30.

On December 27, 2021, Plaintiff signed the Contract and emailed a copy of the signed Contract back to Mockingbird.  See id. ¶ 32.  Plaintiff did not receive a countersigned version of the Contract from Mockingbird.  See id. ¶ 33.

On February 23, 2022, Mockingbird emailed Plaintiff a new estimate in the amount of $167,450.00 for the gooseneck home.  See id. ¶ 35.  This estimate increased the price of numerous line items by 50% and added new line items that were not included in the Invoices, such as stairs, windows, window upgrades, contingency, electrical inspection, plumbing inspection, and shipping costs.  See id. ¶ 36.  The next day, on February 24, 2022, Mockingbird emailed Plaintiff an updated estimate that eliminated the line item cost for air conditioning and included a new line item for cost for solar.  See id. ¶ 37.  This second new estimate totaled $179,250.00.  See id.

From February 24 through March 1, 2022, Plaintiff exchanged phone calls with Unrein, in which Plaintiff explained that the February 23 and February 24, 2022 estimates greatly exceeded Unrein's prior representations of the total cost to build the homes, as well as the estimates in the Invoices and the Contract.  See id. ¶ 38.  Concerned that Mockingbird appeared to be unable or unwilling to build

the tiny homes within the price range originally represented by Unrein, Plaintiff requested that Defendants return her Deposit.  See id. ¶ 41.  Mockingbird refused. See id. ¶ 42.

On April 15, 2022, Plaintiff's significant other, Simeon Chokoisky (Chokoisky), emailed Unrein and offered Defendants "$10,000 as a penalty in exchange for the remainder of" the Deposit.  See Decl'n of Simeon Chokoisky, ECF No. 41-4 ¶¶ 3, 24; see also Exhibit 16, ECF No. 41-5 at 55 (email from Chokoisky to Unrein:  "I'm willing to pay up to a $10k 'penalty' and part as friends in return for the partial refund. . . . Would you consider taking ten thousand dollars in return for a refund of the remaining $94k?").  However, Chokoisky did not receive a substantive response regarding the $10,000 offer and none of the Deposit was returned.  See Decl'n of Chokoisky, ECF No. 41-4 ¶¶ 25-26. Defendants have neither ordered any materials for the tiny homes nor begun construction of the tiny homes.  See Complaint, ECF No. 1 ¶¶ 43-44.

## PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on September 27, 2022.  See Complaint, ECF No. 1.  The Complaint asserts ten claims:  (1) Count I for Unfair or Deceptive Acts or Practices, (2) Count II for Fraudulent Misrepresentation, (3) Count III for Negligent Misrepresentation, (4) Count IV for Illegal Contract, (5) Count V for Declaratory Judgment (Lack of Mutual Assent; Mutual Mistake), (6) Count VI for

Declaratory Judgment (Unenforceable Penalty), (7) Count VII for Conversion,

(8) Count VIII for Unjust Enrichment, (9) Count IX for Promissory Estoppel, and

(10) Count X for Breach of Contract.  See id. ¶¶ 45-111.  The Complaint prays for,

among other things, compensatory damages in the amount of the Deposit

($104,793.15) and treble damages under Hawaii Revised Statutes (HRS) § 480-13.

Defendants were served on October 26, 2022.  See Proofs of Service,

ECF Nos. 9, 10, 12.  After Defendants failed to respond to the Complaint, default

was entered against them on November 29, 2022.  See Entry of Default, ECF

No. 15.

On December 8, 2022, Plaintiff's counsel was contacted by attorney

Bryan Harada who had been retained by Defendants.  See Status Report, ECF

No. 18.  The parties thereafter engaged in settlement discussions.  See id.

On March 22, 2023, Plaintiff informed the Court that the parties

reached a settlement and were "in the process of finalizing the terms of their

settlement agreement."  Status Report, ECF No. 26.  By May 8, 2023, the parties

had entered into a settlement agreement and informed the Court that "Plaintiff will

file a dismissal as soon as the parties complete their obligations under the

settlement agreement[.]"  Status Report, ECF No. 28.  By July 25, 2023, however,

Defendants had breached the settlement agreement.  See Status Report, ECF

No. 30 (noting that Defendants failed to meet two settlement obligations on May

6

17 and July 16, 2023).  On September 29, 2023, Plaintiff notified the Court that

Defendants were no longer represented by the attorney who had engaged in

settlement discussions.  <u>See</u> Status Report, ECF No. 35.

The present Motion for Default Judgment followed, in which Plaintiff

seeks default judgment as to all claims in the Complaint.

<u>DISCUSSION</u>

Default judgment may be entered if the defendant has defaulted by

failing to appear.  <u>See</u> Fed. R. Civ. P. 55(b).  The grant or denial of a motion for

default judgment is within the discretion of the court.  <u>Haw. Carpenters' Trust

Funds v. Stone</u>, 794 F.2d 508, 511-12 (9th Cir. 1986).  Default judgments are

ordinarily disfavored, and cases should be decided on their merits if reasonably

possible.  <u>Eitel v. McCool</u>, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court should

consider the following factors in deciding whether to grant a motion for default

judgment:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil
>     Procedure favoring decisions on the merits.

<u>Id.</u> at 1471-72 (citation omitted).

7

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)).  The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled.  See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Also, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

## A. Jurisdiction

Before considering the merits of default judgment, the Court has an affirmative obligation to determine whether or not it has subject matter jurisdiction over this action and personal jurisdiction over Defendants.  See In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

This Court has diversity jurisdiction over Plaintiff's claims.  See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000,

8

exclusive of interest and costs, and is between--(1) citizens of different States[.]");
Complaint, ECF No. 1 at 21 (seeking an award of compensatory damages in the
amount of $104,793.15 plus treble and punitive damages); Plf's Supp. Memo, ECF
No. 46  at 3-4 (noting Plaintiff is a citizen of Florida and Defendants are citizens of
Texas and/or Hawaii).

The Court also has personal jurisdiction over Defendants because they
were properly served in accordance with the Federal Rules of Civil Procedure
(FRCP).  See Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135
(9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant
unless the defendant has been served in accordance with [FRCP] 4."); see also
Proofs of Service, ECF Nos. 9, 10, 12.

**B. Eitel Factors**

Following a determination that jurisdiction is proper, the Court must
consider whether default judgment is appropriate under the Eitel factors outlined
above.

**1. The Possibility of Prejudice to Plaintiff**

The first factor considers whether Plaintiff would suffer prejudice if
default judgment is not entered.  See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp.
2d 1172, 1177 (C.D. Cal. 2002).  Defendants have not defended against Plaintiff's
claims in this case at all.  Defendants neither responded to the Complaint nor

entered an appearance in this case, although the Court was informed that

Defendants had retained counsel who engaged in settlement discussions with

Plaintiff's counsel in this case.  See Status Report, ECF No. 18 ("On December 8,

2022, Plaintiff's counsel was contacted by Bryan M. Harada, Esq. of Goodsill

Anderson Quinn & Stifel, who represented that he had been retained by

[Defendants].  Since then, the parties have been engaged in settlement

negotiations."); see also Status Reports, ECF No. 26, 28.  Absent entry of default

judgment against Defendants, Plaintiff would be without recourse for recovery

against them.  Therefore, the first Eitel factor favors default judgment.

### 2. Merits of Plaintiff's Substantive Claims

As noted above, for purposes of liability, the factual allegations in the

complaint are taken as true on default.  See TeleVideo Sys., Inc., 826 F.2d at 917-

18; Fair Hous. of Marin, 285 F.3d at 906.  In the present Motion, Plaintiff seeks

default judgment against Defendants as to all claims asserted in the Complaint.

Each claim is addressed in turn.

### a. Unfair or Deceptive Acts or Practices (Count I)

In Count I, Plaintiff asserts a claim for unfair or deceptive acts

or practices under HRS § 480-2.  See Complaint, ECF No. 1 at 11.

Section 480-2(a) makes unlawful "unfair or deceptive acts or practices in the

conduct of any trade or commerce."  To state a such a claim, a consumer

must allege: "(1) a violation of HRS § 480-2; (2) injury to plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages." Aquilina v. Certain Underwriters at Lloyds Syndicate #2003, 407 F. Supp. 3d 1051, 1073 (D. Haw. 2019).

Under Section 480-2, a "deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.'" See Maeda v. Pinnacle Foods Inc., 390 F. Supp. 3d 1231, 1250-51 (D. Haw. 2019) (quoting Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006)) (internal brackets omitted). Representations, omissions, or practices are considered "material" if they involve "information that is important to consumers and, hence, likely to affect their choice of or conduct regarding, a product." Id. (quoting Courbat, 111 Hawai'i at 262, 141 P.3d at 435).

The Complaint details that Plaintiff paid the $104,793.15 Deposit to Defendants based on their representations, including that the custom, high-end, tiny homes would cost no more than $120,000 each, that this price included all of the line items in the Invoices (e.g., custom appliances, air conditioning, custom cabinets, supplies, labor, etc.), and that the homes could be completed around June 2022. See Complaint, ECF No. 1

11

¶¶ 15, 17-18.  Further, Defendants failed to disclose that the Deposit would

be considered non-refundable until ***after*** Plaintiff had paid the Deposit.  <u>See</u>

<u>id.</u> ¶ 30.  Then, contrary to prices stated in the Invoices and in the Contract,

Defendants significantly increased the cost estimates to upwards of $179,250

for one tiny home.  <u>See</u> <u>id.</u> ¶¶ 35, 37.  When Defendants appeared unwilling

to build the tiny homes at the originally quoted prices, Plaintiff asked for a

return of the $104,793.15 Deposit, but Defendants refused.  <u>See</u> <u>id.</u> ¶¶ 41-42.

Plaintiff alleges conduct by Defendants – including their

representations – that would likely mislead customers into similarly paying

the Deposit.  <u>See</u> <u>Maeda</u>, 390 F. Supp. 3d at 1250-51.  Plaintiff establishes

that she was injured in the amount of the Deposit that was not refunded to her

even though Defendants did not construct or deliver either tiny home.  The

Court therefore finds that Plaintiff's allegations, taken as true, are sufficient

to establish Plaintiff's claim in Count I for violation of HRS § 480-2.  <u>See</u>

<u>Aquilina</u>, 407 F. Supp. 3d at 1073.

### b. Negligent Misrepresentation (Count III)

A claim for negligent misrepresentation requires:  "(1) false

information be supplied as a result of the failure to exercise reasonable care or

competence in communicating the information; (2) the person for whose benefit

the information is supplied suffered the loss; and (3) the recipient relies upon the

misrepresentation." See Hoang v. Hulme, No. CV 23-00384-JAO-RT, 2024 WL

1406268, at *6 (D. Haw. Feb. 1, 2024) (quoting Santiago v. Tanaka, 137 Hawai'i

137, 153-54, 366 P.3d 612, 628-29 (2016)).

Plaintiff's claim for negligent misrepresentation is based on the

allegation that Defendants' original representations regarding the actual cost of

building the tiny homes was false. See Complaint, ECF No. 1 ¶ 59. During

Plaintiff's initial phone conversation with Unrein, Unrein represented that the cost

to build each tiny home "would be around $100,000, pre-tax" and that "the cost of

the Gooseneck home would not exceed $120,000." Id. ¶ 17. Mockingbird

subsequently emailed Plaintiff the Invoices, which also represented that the costs

of the tiny homes would be close to $100,000 each. See id. ¶ 20. Consistent with

Unrein's prior representations, these Invoices included costs for "all materials,

labor and equipment to be provided by Mockingbird in the construction of both

Tiny Homes." Id. ¶ 21. In reliance on these representations, Plaintiff paid

$104,793.15 as the Deposit. See id. ¶ 25. However, contrary to Defendants'

representations, after Plaintiff paid the Deposit, Defendants' increased the cost

significantly to $179,250.00 for one of the tiny homes. See id. ¶ 37. When

Plaintiff asked for a return of the Deposit, Defendants refused. See id. ¶ 42. The

Court finds that these factual allegations on which Plaintiff relied in making the

Deposit, taken as true, establish a claim for negligent misrepresentation against

Mockingbird and Unrein.  See Hoang, 2024 WL 1406268, at *6.

### c. Fraudulent Misrepresentation (Count II)

"A plaintiff bringing a claim for fraudulent or intentional

misrepresentation must plead that: '(1) false representations were made by

defendants; (2) with knowledge of their falsity (or without knowledge of their truth

or falsity); (3) in contemplation of plaintiff's reliance upon these false

representations; and (4) plaintiff did rely upon them.'"  See Hoang, 2024 WL

1406268, at *6 (quoting Ass'n of Apartment Owners of Newtown Meadows ex rel.

Bd. of Directors v. Venture 15, Inc., 115 Hawai'i 232, 263, 167 P.3d 225, 256

(2007), as corrected (Sept. 20, 2007)) (internal quotation marks omitted).

Fraudulent representation claims "must be pled with greater

particularity pursuant to Rule 9(b)."  Id. (citing In re Finjan Holdings, Inc.,

58 F.4th 1048, 1057 (9th Cir. 2023)).  Under FRCP Rule 9(b), claims "must state

with particularity the circumstances constituting fraud or mistake."  Hoang, 2024

WL 1406268, at *5 (citing Fed. R. Civ. P. 9(b)).  Specifically, a pleading asserting

fraud must "provide an account of the time, place, and specific content of the false

representations as well as the identities of the parties to the misrepresentations."

Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007).  Where a claim of fraud

is asserted against multiple defendants, a plaintiff "is not permitted to merely lump

defendants together, but must differentiate their allegations and inform each

defendant separately of the allegations surrounding his alleged participation in the fraud." <u>Hoang</u>, 2024 WL 1406268, at *6 (quoting <u>Swartz</u>, 476 F.3d at 764-65) (internal quotation marks omitted).  At a minimum, the plaintiff must "identify the role of each defendant in the alleged fraudulent scheme." <u>Swartz</u>, 476 F.3d at 764-65 (internal brackets and citation omitted).

       In the Complaint, Plaintiff's claim for fraudulent misrepresentation – like Plaintiff's negligent misrepresentation claim – is based on "Defendants' representations regarding the actual cost of building the Tiny Homes."  Complaint, ECF No. 1 ¶ 50.  However, Plaintiff has not pled facts establishing that Mockingbird and Unrein each had "knowledge of the[ building costs'] falsity." <u>Hoang</u>, 2024 WL 1406268, at *6 ("Plaintiffs have not pled [the defendant's] 'knowledge of the statement's falsity,' a required element of fraudulent misrepresentation." (internal quotation marks, brackets and citations omitted)).  In other words, Plaintiff provides no specific facts as required under Rule 9(b) reflecting that Mockingbird and Unrein each *knew* that the building costs as originally stated by Unrein and in the Invoices and Contract were false.  Absent factual allegations supporting this element of the fraudulent misrepresentation claim in Count II, the Court finds that Plaintiff's allegations, taken as true, are insufficient to establish fraudulent misrepresentation against the Defendants.

### d. Contract-Related Claims (Counts IV, V, VI, IX, and X)

In Counts IV, V, VI, IX, and X, Plaintiff raises various contract
and contract-related claims, essentially challenging the Contract and
Defendants' various promises as invalid.  Specifically, in Count IV, Plaintiff
asserts that the Contract is an "illegal contract" and therefore "void and
unenforceable" because "Mockingbird and Mr. Unrein failed to obtain a valid
contractor's license prior to entering into the Construction Contract with
Plaintiff."  Complaint, ECF No. 1 ¶¶ 64-68.  Count V alleges that the "parties
did not have a valid meeting of the minds or mutual assent" concerning the
Contract because no plans or specifications were ever agreed to by the parties
and the price of the tiny homes increased significantly after the Contract was
signed.  See id. ¶ 71.  Count IX asserts a claim for promissory estoppel.  See
id. ¶¶ 99-105.  And Plaintiff raises "alternative" claims in Count VI (that, if
the Contract is determined to be valid and binding, then the "non-refundable"
provision is an unenforceable penalty) and Count X (breach of contract).  See
id. ¶¶ 81-85, 108-111.

Plaintiff's prayer with respect to each of these contract claims is for a
return of the Deposit.  As such, Plaintiff raises these various contract-related
claims to challenge the validity of the Contract, which states that the Deposit was

non-refundable.  Ultimately, Plaintiff seeks to undo the non-refundable

characterization of the Deposit in the Contract so that she may recover her

Deposit.

Importantly, however, Plaintiff paid the Deposit to Defendants

**before** she signed the Contract.  See Complaint, ECF No. 1 ¶¶ 23-24, 32.  When

she signed the Contract, Plaintiff believed that the Deposit was refundable.  Only

after she paid the Deposit did Defendants provide her with the Contract, which

stated that the Deposit was non-refundable.  Thus, the Contract was not executed

and thus could not have governed the Deposit at the time it was paid.  Taking

Plaintiff's allegations as true, as this Court must when determining whether

default judgment is appropriate, the Court finds that Plaintiff paid the Deposit

before signing the Contract and with the belief that the Deposit was refundable.

Moreover, Plaintiff alleges that the Contract was never fully executed, as she was

not informed that Defendants executed the Contract and she did not receive a

copy of the fully executed Contract.  In light of these facts, the Court finds that

the terms of the Contract do not govern the refundability of the Deposit and,

therefore, the Court need not and does not determine whether the Complaint

sufficiently asserts contract-related claims.

### e. Conversion (Count VII)

In Count VII, Plaintiff asserts a claim for conversion against

Mockingbird and Unrein.  See Complaint, ECF No. 1 ¶¶ 90-92.  As to this

claim, Plaintiff alleged in her Complaint:  "Despite Plaintiff's request for a

refund of the [Deposit], Defendants have failed and refused and continue to

fail and refuse to return Plaintiff's [Deposit]."  Id. ¶ 91.  Plaintiff asserts that

Defendants' refusal to return the Deposit constitutes wrongful conversion.

See Plf's Mot. at 26-27.

> A conversion claim under Hawaii law may be proven by any one

of the following acts:  "(1) a taking from the owner without his consent;

(2) an unwarranted assumption of ownership; (3) an illegal use or abuse of

the chattel; and (4) a wrongful detention after demand."  See Privratsky v.

Liberty Mut. Fire Ins. Co., 637 F. Supp. 3d 1077, 1080 (D. Haw. 2022)

(quoting Freddy Nobriga Enters., Inc. v. Dep't of Haw. Home Lands, 295

P.3d 993, 999 (Haw. Ct. App. 2013)) (internal quotation marks and brackets

omitted).

> With respect to the fourth act (a wrongful detention after

demand), "the general rule recognized by all the authorities is that where the

original taking is lawful and there has been no illegal assumption of

ownership or illegal user, a demand and refusal must be shown[.]"  See id. at

1082 (quoting Tsuru v. Bayer, 25 Haw. 693, 695-96 (1920)) (internal

brackets omitted).  "In other words, when *none* of the first three acts have

occurred, a claim for conversion can still exist solely by the occurrence of the fourth act." Id. (emphasis in original). Indeed, "*[a]ny* act of dominion wrongfully exerted over property in denial of the owner's right or inconsistent with it amounts to a conversion." Id. (quoting Tsuru, 25 Haw. at 698) (emphasis in original).

In this case, at the time Plaintiff made the Deposit, she understood it to be refundable. However, when Plaintiff asked for a return of the Deposit, Defendants refused. See Complaint, ECF No. 1 ¶ 42. In fact, Defendants "continue to fail and refuse to return Plaintiff's [Deposit]." Id. The Court finds that Defendants' refusal to return Plaintiff's Deposit amounts to conversion. See Privratsky, 637 F. Supp. at 1082 (finding conversion occurred where the plaintiff demanded return of his metal gate operator from the defendant and the defendant refused).

### f. Unjust Enrichment (Count VIII)

As an alternative claim, Plaintiff pleads a claim for unjust enrichment against both Mockingbird and Unrein. See Complaint, ECF No. 1 ¶ 93-97. Plaintiff alleges that, in paying the Deposit to Defendants, "Plaintiff conferred a benefit upon Mockingbird" and that "Mockingbird's retention of the [Deposit] would be unjust." Id. ¶¶ 95-96.

In order to establish a claim for unjust enrichment, "there must

be 'an absence of an adequate remedy at law.'"  <u>Newcomb v. Cambridge</u>

<u>Home Loans, Inc.</u>, 861 F. Supp. 2d 1153, 1164 (D. Haw. 2012) (quoting

<u>Porter v. Hu</u>, 116 Hawai'i 42, 169 P.3d 994, 1007 (Haw. Ct. App. 2007)).  As

discussed below, the Court finds and recommends that Plaintiff be awarded

damages.  As such, there *is* an adequate remedy at law in this case, and the

Court therefore finds that Plaintiff's alternative claim for unjust enrichment is

not applicable.

In sum, the Court finds that Plaintiff has adequately plead the

following claims:  Count I for Unfair or Deceptive Acts or Practices, Count III for

Negligent Misrepresentation, and Count VII for Conversion.  The Court therefore

finds that this factor (merits of Plaintiff's substantive claims) weighs in favor of

default judgment as to these claims.  However, this factor weighs against default

judgment as to Plaintiff's other claims.

### 3. Sufficiency of the Complaint

As discussed above, the allegations in the Complaint are sufficiently

pled for Count I for Unfair or Deceptive Acts or Practices, Count III for Negligent

Misrepresentation, and Count VII for Conversion against Defendants.  Therefore,

this factor weighs in favor of default judgment as to these claims and against

default judgment as to Plaintiff's other claims.

### 4. Sum of Money at Stake

The Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. Here, Plaintiff seeks $104,793.15 in compensatory damages and treble damages, for a total of $314,379.45. See Complaint, ECF No. 1; Plf's Mot. at 29-30. As discussed below, the Court finds that Plaintiff is entitled to damages in this amount from Defendants. Insofar as the sum of money at stake is not too large or unreasonable in relation to Defendants' conduct, the Court finds that this factor weighs in favor of default judgment. See Langer v. Euclid Ave., LLC, No. 19-CV-2384 DMS (DDL), 2022 WL 3588320, at *4 (S. D. Cal. Aug. 22, 2022) ("Courts disfavor default judgment when 'the sum of money at stake is too large or unreasonable in relation to the defendant's conduct.'").

### 5. Possibility of Dispute Concerning Material Facts

As noted above, the well-pled factual allegations of the Complaint, except those relating to the amount of damages, will be taken as true. See TeleVideo Sys., Inc., 826 F.2d at 917-18. Defendants have been given a fair opportunity to defend this action and has not done so at all. Therefore, the Court finds that this factor favors default judgment.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth Eitel factor considers whether defendant's default may

21

have been the product of excusable neglect." Ho v. Tan Trinh, No. 8:16-CV-481-JLS-JCGX, 2016 WL 11520810, at *5 (C.D. Cal. Oct. 27, 2016). "This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." Id. As noted above, Defendants were served with the Complaint and Defendants' counsel even contacted Plaintiff's counsel and engaged in settlement negotiations. See Proofs of Service, ECF Nos. 9, 10, 12; Status Reports, ECF Nos. 18, 26, 28. The Court therefore finds that this factor favors entry of default judgment.

## 7. Policy Favoring Decisions on the Merits

Defendants' default renders a decision on the merits impractical, if not impossible. Under Rule 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." PepsiCo., Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh Eitel factor is not alone dispositive"). Here, Defendants have failed to defend this action and have consequently rendered adjudication on the merits before this Court impracticable. This factor does not preclude the Court from entering default judgment against Defendants.

## 8. Totality of Eitel Factors

The Court finds that the totality of the factors discussed above weighs

22

in favor of entering default judgment against Defendants as to the following

claims:  Count I for Unfair or Deceptive Acts or Practices, Count III for Negligent

Misrepresentation, and Count VII for Conversion.

### C. Remedies

Although a defendant's default establishes liability, it does not

establish all relief to which a plaintiff is entitled.  A plaintiff must provide evidence

to support its requested relief and that relief "must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiff seeks a return of her Deposit in the amount of $104,793.15 and treble

damages, for a total of $314,379.45.  See Plf's Mot., ECF No. 41 at 29, 31.

Plaintiff also seeks leave to file a motion for attorneys' fees and costs.  See id.

at 31.

As noted above, the allegations in Plaintiff's Complaint taken as true

establish that Defendants violated HRS § 480-2.  Pursuant to HRS § 480-13(b)(1),

a consumer injured by acts forbidden or declared unlawful by § 480-2 "shall be

awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained,

whichever sum is the greater, and reasonable attorney's fees together with the costs

of suit."  Id. § 480-13(b)(1); see Sambor v. Omnia Credit Servs., Inc., 183 F. Supp.

2d 1234, 1244 (D. Haw. 2002) ("When section 480-2 is violated, Haw. Rev. Stat.

§ 480-13 allows an individual to bring a suit and seek treble damages or $1,000,

whichever is greater, as well as attorney's fees and costs.").

       Plaintiff was injured by the loss of her Deposit caused by Defendants'

conduct in violation of Section 480-2, which Deposit amounts to $104,793.15.

Pursuant to HRS § 480-13(b)(1), Plaintiff may recover up to threefold damages,

totaling $314,379.45.  The Court finds that, under the circumstances of this case

and considering that Plaintiff attempted to pay Defendants $10,000 for a return of

the Deposit, which Defendants also refused, Plaintiff is entitled to threefold

damages.  Thus, the Court recommends that Plaintiff be awarded damages in the

amount of $314,379.45.

       Pursuant to HRS § 480-13(b)(1), Plaintiff is also entitled to

"reasonable attorney's fees together with the costs of suit."  The Court therefore

recommends granting Plaintiff's request for leave to file a motion for attorneys'

fees and costs.  <u>See</u> Plf's Mot. at 31.  If any such motion seeks to recover fees and

costs other than those that are clearly related to Plaintiff's claim for violation of

HRS § 480-2 (Count I), Plaintiff shall provide legal authority for the recovery of

such fees and costs.

<u>CONCLUSION</u>

       The Court FINDS and RECOMMENDS that Plaintiff's Motion for

Default Judgment Against Mockingbird Tiny Homes LLC and Chad Unrein as to

All Counts of the Complaint be GRANTED IN PART and DENIED IN PART.

See Plf's Mot., ECF No. 41.

The Court recommends that default judgment be entered in favor of Plaintiff and against Defendants as to Count I for Unfair or Deceptive Acts or Practices, Count III for Negligent Misrepresentation, and Count VII for Conversion. The Court also recommends awarding Plaintiff damages in the amount of $314,379.45 and permitting Plaintiff to file a motion for attorneys' fees and costs as discussed herein. The Court further recommends that default judgment be denied in all other respects.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, May 31, 2024.



Wes Reber Porter
United States Magistrate Judge

Lakaeva v. Mockingbird Tiny Homes LLC, et al.; CIVIL NO. 22-00424 JMS-WRP;
FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT.